**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ANTHONY PEACE, # 1760799** | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 3:14-CV-0799-K-BK |
| | § | |
| **WILLIAM STEPHENS, Director TDCJ-CID,** | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the petition for a writ of habeas corpus under 28 U.S.C. § 2254 was referred to the United States Magistrate Judge. For the reasons that follow, it is recommended that the petition be denied.

**I. BACKGROUND**

Petitioner was convicted of indecency with a child by contact and sentenced to life in prison. *Peace v. Stephens*, No. F10-12535Y (Criminal District Court No. 7, Dallas County, 2011), *aff'd*, No. 05-11-01442-CR, 2012 WL 6634691 (Tex. App.—Dallas Dec. 21, 2012, no pet) (not designated for publication). The Texas Court of Criminal Appeals denied state habeas relief without a written order. *Ex Parte Peace*, No. 80,095-02 (Tex. Crim. App. 2014). Doc. 11-13 at 2.

In his timely, *pro se* federal petition, Petitioner claims trial court errors and ineffective assistance of counsel at trial and on appeal. Doc. 3 at 6-8. Respondent argues the petition lacks merit, and Petitioner has filed a reply. Doc. 14; Doc. 17.

## II. ANALYSIS

Petitioner is not entitled to habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner bears the burden of establishing that he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). However, that burden is "difficult to meet," as the decision of the state court is reviewed under a "highly deferential standard" and afforded the "benefit of the doubt." *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011); *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted). The deferential standard of review applies even where the state court, as in this case, summarily denied the state application without written order. *See Richter*, 562 US at 100 ("§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

The Court reviews ineffective assistance of counsel claims under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance," under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1403 (2011) (quoted cases omitted). In light of the deference accorded by section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. 86, 101.

**Ineffective Assistance of Counsel on Appeal (Claim 1)**

Petitioner asserts appellate counsel rendered constitutionally-ineffective assistance when he failed to present on appeal the argument made by trial counsel that enhancement of Petitioner's sentence on the basis of a prior conviction violated the *Ex Post Facto* Clause. Doc. 4 at 6-10; Doc. 11-5 at 137-138. In his affidavit presented to the state habeas court, appellate counsel responded that he "researched the issue and concluded that there was no such violation and therefore did not advance the claim on appeal." Doc. 11-13 at 136.

"The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) (citing *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983)). Indeed, it is counsel's professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach to maximize the likelihood of success on appeal. *Jones*, 463 U.S. at 752; *Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003) (counsel is obligated only to raise and brief those issues that are believed to have the best chance of success). In order to prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal "was objectively unreasonable." *Schaetzle*, 343 F.3d at 445. This reasonableness standard requires counsel to present "[s]olid, meritorious arguments based on directly controlling precedent." *Id.* (quoting *United States v. Williamson*, 183 F.3d 458, 462-63 (5th Cir. 1999)).

Here, Petitioner has not demonstrated that the *ex post facto* issue was clearly stronger than the three issues counsel did pursue on direct appeal. See *Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome") (cited case omitted). Recidivist statutes, like the mandatory life-sentence provision of TEX. PENAL CODE. §

12.42(c)(2), do not violate the *Ex Post Facto* Clause; they "penalize the new criminal offense being enhanced rather than the prior offense used for enhancement and . . . statute[s] imposing a punishment on only future crimes [are] not an *ex post facto* violation." *See Ex parte White*, 211 S.W.3d 316, 320 (Tex. Crim. App. 2007); *see also United States v. Rasco*, 123 F.3d 222, 227 (5th Cir. 1997) (citing *Gryger v. Burke*, 334 U.S. 728, 732 (1948) ("The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.")).

In light of the foregoing, Petitioner has not shown that the state court's decision rejecting his claim of ineffective assistance of appellate counsel was unreasonable. Therefore, his first claim fails.

### Ineffective Assistance of Counsel at Trial (Claims 2-5)

To establish ineffective assistance of counsel at trial, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. 668, 687. The Court need not address both components if the petitioner makes an insufficient showing on one. *Id.* at 697. To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 689. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that under the circumstances the challenged action might be considered sound trial strategy. *Id.* at 689. Under *Strickland*'s prejudice prong, a petitioner additionally must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

*Failure to Inform Petitioner of a Plea Offer (Claim 2)*

Petitioner asserts his trial counsel rendered ineffective assistance when he failed to inform him of the State's two-year plea offer.  Doc. 3 at 6; Doc. 4 at 13-15.  In support, he relies on purported "newly discovered evidence," namely a June 29, 2012 letter from Carl Day, who represented Petitioner prior to his trial counsel, in which Day related that "months" after he withdrew from the case, Day "was informed that on the actual day of trial, [Petitioner] received yet a further reduced plea offer from the Assistant District Attorney for 2 years."  Doc. 11-13 at 71 (emphasis added).  Importantly, Day did not recount any first-hand knowledge of such an offer.  And, indeed, the record contradicts any such misinformation.

At the pretrial hearing, the State repeated its plea offer of ten-year deferred adjudication probation.  Doc. 11-3 at 6, Vol. 2 RR.  Petitioner, however, rejected that offer and chose instead to proceed to trial.  Doc. 11-3 at 5-6.  Before the pretrial hearing, as recounted by defense counsel, Petitioner declined a plea offer of ten years' imprisonment.  Doc. 11-3 at 13.  Petitioner also rejected the State's renewed offer of ten-year deferred probation after the pretrial hearing, as the prosecutor reported and defense counsel acknowledged on the first day of trial.  Doc. 11-4 at 8, Vol. 3 RR.  However, after the selection of the jury (during the second day of trial), Petitioner sought to engage in plea negotiations.  Doc. 11-5 at 14, Vol. 4 RR .  The trial judge promptly denied his request, informing Petitioner, "You have had plenty of opportunities to accept a plea in this case and you decided not to do that and so we're proceeding with trial."  Doc. 11-5 at 15.

Although defense counsel had a duty to communicate any plea offers to Petitioner, *see Missouri v. Frye,* --- U.S. ---, 132 S. Ct. 1399, 1408 (2012) (defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused), Petitioner cannot show that defense counsel failed to

communicate a two-year plea offer on the first day of trial, as he contends here. His allegation is based on the mere "belief" of his previous trial counsel that such an offer was extended. Day, who had already withdrawn from the case before the events at issue allegedly occurred, had no first-hand knowledge nor credible basis for his assertion; and most importantly, the record of the proceedings clearly show that no such offer was tendered. Moreover, Petitioner's trial counsel averred in his affidavit to the state habeas court that he did not recall a two-year offer being presented on the first day of trial. Doc. 11-13 at 134. Accordingly, this claim has no merit.

*Failure to Present Speedy Trial Motion (Claim 3)*

Next, Petitioner contends counsel rendered ineffective assistance in failing to assert a speedy trial violation stemming from the near one and one-half year delay between his April 27, 2010 arrest and October 3, 2011 jury trial. Doc. 3 at 7; Doc. 4 at 18-19. Although Petitioner submitted a *pro se* motion for speedy trial in April 2011, Doc. 11-1 at 41, he claims counsel "failed to get a ruling on [his] motion," thus denying him "a viable claim for purposes of appeal." Doc. 4 at 18.

Speedy trial rights apply to state criminal proceedings through the Fourteenth Amendment. In reviewing a speedy trial claim, the court must balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. *Barker v. Wingo,* 407 U.S. 514, 530 (1972). Here, the record does not reflect any dilatory tactics by the State. Indeed, Petitioner contributed to the delay when he retained a new attorney in August 2010, and again when that attorney moved to withdraw for non-payment of fees in July 2011, shortly before the first trial setting of August 29, 2011. Doc. 11-1 at 20, 43-44. Most importantly, Petitioner has made no showing whatsoever that he suffered prejudice from the delay in his case, *see Goodrum,*

547 F.3d at 262 (vague and conclusory allegations are clearly insufficient to prove the prejudice required to support a speedy trial claim), and trial counsel "did not believe speedy trial was an issue in this case." Doc. 11-13 at 134. An 18-month delay is insufficient to warrant a presumption of prejudice. *See Amos v. Thornton,* 646 F.3d 199, 206–207 (5th Cir. 2011) (reasoning that a delay of less than thirty months precludes the first *Barker* factor from "strongly favor[ing] the accused"); *Goodrum v. Quarterman,* 547 F.3d 249, 260 (5th Cir. 2008) (noting that a presumption of prejudice from delay alone "applies only where the delay is at least 5 years").

Petitioner has not shown a non-frivolous basis for trial counsel to have sought dismissal on speedy trial grounds. Counsel was not required to make a meritless motion. *See Green v. Johnson,* 160 F.3d 1029, 1037 (5th Cir. 1998) ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness"). In any event, Petitioner has alleged no facts to show a reasonable probability that, but for counsel's failure to raise a speedy trial violation, the outcome of his trial would have been different. Accordingly, this claim also lacks merit.

*Failure to Object to the State's Comments About his Right to Testify (Claim 4)*

Petitioner also asserts counsel rendered ineffective assistance when he did not object to the state's impermissible comments about the "invocation of his right to silence at trial." Doc. 3 at 7. Relying on the following excerpt from closing argument, he contends "the State made an indirect allusion to the petitioner['s] failure to testify doing [sic] closing argument to the believability of their witness," Doc. 3 at 7; Doc. 4 at 23:

> Do they have a reason to be lying to me right now? And I will tell you that the answer to all of those questions in regards to that little girl who got up that stand today is, yeah, it's logical. It was consistent because if it hadn't have been, I can promise you you would have heard about that.

>Mr. Ingram has been doing his job. He's been asking questions. He even presented some witnesses. So if she hadn't been consistent about this from the beginning, you would have heard that.

Doc. 11-5 at 119. Petitioner states that the above argument "clearly tells the jury the only way Petitioner could assert his innocence was for him to have testified in his own behalf." Doc. 4 at 24. He also argues "the comment did actual harm" in that it permitted "the jury [to] take notice of or to focus their deliberation on a lack of testimony by the defendant," which "is an insurmountable weapon for a prosecutor to have." Doc. 4 at 24.

A prosecutor's comment on a defendant's failure to testify violates the Fifth Amendment's right against self-incrimination, which is applicable to the states under the Fourteenth Amendment. *Griffin v. California,* 380 U.S. 609, 613-615 (1965); *United States v. Martinez-Larraga,* 517 F.3d 258, 266 (5th Cir. 2008). The court must consider the prosecutor's remarks in context, *United States v. Delgado,* 672 F.3d 320, 335 (5th Cir. 2012) (*en banc*), and determine (1) if the prosecutor had the "manifest intent ... to comment on the defendant's silence," or (2) if "the character of the remark [was] such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *Cotton v. Cockrell,* 343 F.3d 746, 751 (5th Cir. 2003). With respect to the first, manifest intent to comment on a defendant's failure to testify is lacking when there is another "equally plausible" explanation for a prosecutor's remarks. *United States v. Collins,* 972 F.2d 1385, 1406 (5th Cir. 1992) (internal quotation and citation omitted). As to the second, the appropriate question is not whether a jury "possibly or even probably" would view it as a comment on the defendant's silence, but whether a jury would "necessarily" construe it as such. *Id.*

Here, when read in context, the prosecutor argument was not a comment on Petitioner's failure to testify. The prosecutor began his closing argument by recounting the evidence, which

Page **8** of **15**

consisted primarily of the testimony of the thirteen-year-old complainant. Doc. 11-5 at 117-118. The prosecutor then reminded the jury of its duty to judge the credibility of witnesses and to evaluate whether the little girl had lied. Doc. 11-5 at 119. It was in this context that the prosecutor noted that if the girl's testimony had been inconsistent, the defense would have made an issue of it at trial. Doc. 11-5 at 119. A prosecutor, however, is permitted to comment on "'the failure of the defense as (opposed to [the defendant]) to counter or explain' the testimony presented or evidence introduced." United States v. Soudan, 812 F.2d 920, 930 (5th Cir. 1986) (quoted case omitted). Contrary to Petitioner's suggestion, testing the credibility of the State's complaining witness does not necessarily require a defendant to testify and, in context here, the prosecutor merely illustrated that defense counsel was up to that task: "Mr. Ingram has been doing his job. He's been asking questions. He even presented some witnesses. So if she hadn't been consistent about this from the beginning, you would have heard that." Doc. 11-5 at 119.

Based on the evidence, the Court concludes that the prosecutor did not have the manifest intent to comment on the defendant's silence. Nor does the record suggest that the comments were "of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify," as required to raise a constitutional violation. United States v. Rocha, 916 F.2d 219, 232 (5th Cir. 1990) (citation and quotations omitted).[1] Thus, trial counsel was not ineffective for failing to raise such a meritless objection. See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998) ("failure to make a frivolous objection does not cause

---

[1] The cases on which Petitioner relies, see Doc. 4 at 24, 27; Doc. 17 at 4, are clearly inapposite. See Eberhardt v. Bordenkircher, 605 F.2d 275, 278 (6th Cir. 1979) (state prosecutor's final argument concerning what other witnesses could have testified, accompanied by gesture toward defendant, was impermissible comment on failure of defendant to take stand); Hick v. State, 525 S.W.2d 177 (Tex. Crim. App. 1975) (prosecutor's physical actions during argument in standing behind defendant when prosecutor raised his voice, looked down at defendant and stated "that there is somebody that we haven't heard from in the case. And I think you all know who he is," was an impermissible comment on failure of defendant to testify).

counsel's performance to fall below an objective level of reasonableness"). Accordingly, Petitioner's fourth claim has no merit.

*Failure to Aggressively Examine Victim (Claim 5)*

Next, Petitioner contends defense counsel rendered ineffective assistance when he failed to examine the complainant vigorously at trial "to show [her] inconsistent statements" and "that she was biased [and] untruthful." Doc. 3 at 8; Doc. 4 at 30. He states that "the crux of [his] trial was the word of the complainant," since he did not testify and there was no other witness or physical evidence available. Doc. 3 at 8; Doc. 4 at 30. Petitioner maintains that counsel's failure "to show evidence of lying was [crucial] to his defense" and prevented him "from fully developing a defense of innocence." Doc. 4 at 31. In response to the above assertion, trial counsel averred, "I explained to [Petitioner] before trial, in my opinion the jury may become annoyed if I become too aggressive with the complaining witness. The idea was to try and minimize any damage from her testimony." Doc. 11-13 at 134.

Review of the record shows that despite this trial strategy, defense counsel effectively questioned the 13-year old complainant to clarify essential matters. In response to counsel's questions, the complainant confirmed that, on the night in question, Petitioner neither touched her vaginal area nor buttocks, that he did not yell at her or push her around violently, and that he immediately discontinued any touching when she stated that she was sleepy. Doc. 11-5 at 98-100. Under his cross examination, she also admitted that Petitioner was wearing clothes at all times. Doc. 11-5 at 102-103.

Petitioner's arguments that counsel failed to adequately discredit the complainant's testimony or expose her bias and credibility due to deficiencies in cross-examination are, for the most part, conclusory and insufficient to overcome the presumption that counsel's examination

of the complainant was, in fact, in accordance with reasonable trial strategy.  It is apropos that forceful questioning could backfire and cause a complainant, especially a child, to appear even more sympathetic to the jury.  *Strickland*, 466 U.S. at 689-690 (cautioning courts not to second guess counsel's decisions through distorting lens of hindsight and to employ presumption that counsel's conduct falls within a wide range of reasonable assistance and that it might be considered sound trial strategy); *Ford v. Cockrell,* 315 F.Supp.2d 831, 859 (W.D.Tex. 2004), *aff'd,* 135 F. App'x 769 (5th Cir.2005) ("The decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment.").  Obviously, the cross-examination of a minor victim of a sex-related offense is a difficult and sensitive undertaking.

While Petitioner claims the complainant had recanted her testimony, he does not offer anything to support that assertion apart from minor discrepancies in her story, as related prior to trial in the police incident report and forensic interview.  Doc. 4 at 30-32.  More importantly, Petitioner has not indicated what specific cross examination counsel should have conducted, what such an examination would have elicited, or how such testimony would have been beneficial to him.

Accordingly, the Court finds that Petitioner has not demonstrated that counsel's cross examination of the victim was deficient.  Nor has he shown that he suffered any prejudice -- namely that additional or different questioning would have changed the outcome of the trial.

Finally, Petitioner also claims a Confrontation Clause violation based on counsel's failure to effectively cross examine the victim to impeach her testimony and show that she lied.  Doc. 4 at 31-34; Doc. 17 at 5.  He asserts that "with no ability to show the victim lied," he had no viable defense.  Doc. 17 at 5.  However, since the complainant testified at trial, Petitioner cannot show a

violation of the Confrontation Clause, and his reliance on *Crawford v. Washington*, 541 U.S. 36, 59 (2004), is misplaced.  *See* U.S. Const. Amend. VI (Under the Sixth Amendment, a criminal defendant "enjoy[s] the right . . . to be confronted with the witnesses against him."); *Crawford*, 541 U.S. at 59 (holding that the Confrontation Clause bars testimonial statements of a witness who does not appear at trial unless:  (1) he was unavailable to testify; and (2) the defendant had a prior opportunity to cross-examine the witness).

In summary, Petitioner has not demonstrated that the state court's decision rejecting his claims of ineffective assistance of counsel at trial was unreasonable.  Therefore, he is not entitled to relief on his second, third, fourth, and fifth claims.

### Denial of Petitioner's Motion for Grand Jury Transcript (Claim 6)

Lastly, Petitioner contends the trial court's denial of his motion to produce grand jury transcripts "violated his constitutional rights under *Brady v. Maryland*."  Doc. 3 at 8.  He maintains, as defense counsel argued in the motion to produce, that the testimony presented to the grand jury was of "particularized need" to the defense.  Doc. 4 at 42; Doc. 11-1 at 54. Counsel not only believed that a grand jury transcript was necessary to effectively cross examine state's witnesses, but also that it might lead "to other [favorable] evidence."  Doc. 11-1 at 55. However, because the State did not have a grand jury transcript to produce, the trial court denied the motion as moot during a pretrial hearing.  Doc. 11-3 at 9, Vol. 2 RR at 9.[2]

To establish a *Brady* violation, a petitioner must prove (1) the prosecutor suppressed or withheld evidence (2) that was favorable and (3) material to his guilt or punishment.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

---

[2] State law requires a particularized need or special reason "to circumvent the traditional policy of grand jury secrecy."  *Bynum v. State*, 767 S.W.2d 769, 781 (Tex. Crim. App. 1989); Tex. Code Crim. Proc. art. 20.02(a) (West).

Page **12** of **15**

Here, Petitioner has not alleged, much less established, that the State suppressed evidence or witness statements that were favorable and material to his defense. He merely speculates that the grand jury transcript "*might* have assisted the defense" in impeaching witnesses and that it was "*believed to contain* testimony, which can lead to other [favorable] evidence." Doc. 17 at 6; Doc. 11-1 at 55 (emphasis added). However, speculation alone does not form the basis for habeas corpus relief. Without evidence in the record, "a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Even assuming evidence or witness statements were presented to the grand jury, Petitioner has not established that anything in the grand jury proceedings would have changed the jury's guilty verdict. Indeed, the State did not once mention or refer to the grand jury testimony during trial. Doc. 11-5. Based on this, the Court concludes that Petitioner cannot show a *Brady* violation arising from the trial court's denial of the motion to produce grand jury transcript due to the State's averment that none existed. *See Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998) (denying habeas relief because petitioner failed to establish *Brady* violation based on prosecution's failure to reveal prior inconsistent statements in grand jury transcripts, since Petitioner failed to show material inconsistencies, and any failure by defense to obtain grand jury transcripts was not due to any obstruction by the state); *Landor v. Cain*, 2014 WL 7342361, at *23-24 (E.D. La. Dec. 23, 2014) (denying *Brady* claim stemming from failure to provide grand jury transcripts because the petitioner did not establish that he was denied *Brady* material or that the grand jury proceedings had a prejudicial impact on the verdict at his trial).

Petitioner has not shown that the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law.  Therefore, his sixth claim also fails.

### State Habeas Proceedings

Petitioner challenges at length the adequacy of the state habeas proceedings, claiming the state court denied him relief without holding an evidentiary hearing.  Doc. 4 at 16; Doc. 17 at 2, 3, 6, 7.  Infirmities in collateral proceedings, however, are not grounds for federal habeas relief. *Rudd v. Johnson*, 256 F.3d 317, 319-320 (5th Cir. 2001).

### Evidentiary Hearing Not Required

Throughout his pleadings in this case, Petitioner requests an evidentiary hearing to develop his claims.  However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)).  Here, as in *Pinholster*, the petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court.  Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court.  Accordingly, he is not entitled to an evidentiary hearing.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus be **DENIED**.

SIGNED March 20, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE